**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT ASHLAND**

CIVIL ACTION NO. 08-84-DLB-EBA

HEATHER LYNN JONES                                                            **PLAINTIFF**

vs.                              <u>**MEMORANDUM OPINION & ORDER**</u>

RANDY BINION, ET AL.                                                          **DEFENDANTS**

\*     \*     \*     \*     \*     \*     \*

Plaintiff Heather Lynn Jones was sexually assaulted on several occasions while she was incarcerated at the Carter County Detention Center (CCDC) by Defendant Keith Hollingsworth, who was a maintenance officer at CCDC. This led to independent civil and criminal proceedings. Following the criminal trial, Defendant Hollingsworth was convicted of depriving Plaintiff of her civil rights by subjecting her to a sexual act in violation of 18 U.S.C. § 242. *United States v. Hollingsworth*, No. 0:10-CR-5-DLB-EBA. Defendant Hollingsworth was sentenced to a concurrent forty-four (44) month term of imprisonment, twelve (12) months on the count involving Plaintiff Jones. He has appealed his criminal conviction to the Sixth Circuit.

Plaintiff's civil action is brought under 28 U.S.C. § 1983 and alleges constitutional violations and various state law torts as a result of being sexually assault by Defendant Hollingsworth while incarcerated at CCDC. (Docs. # 2, 48). Defendants now move for summary judgment, arguing that most of Plaintiff's claims are barred by a one-year statute of limitations. (Docs. # 55, 56). Defendants also contend that Plaintiff's intentional infliction

1

of emotional distress claim should be dismissed because, under Kentucky law, it is merely a "gap-filler"—appropriate only when traditional common law torts are unavailable. Lastly, Defendants CCDC and the Carter County Fiscal Court aver that they should be dismissed because they were not named until well after the statute of limitations expired and are not entities subject to suit.

The pending motions have been fully briefed and are ripe for review. (Docs. # 55, 56, 59, 62, 63). For the reasons that follow, Defendants' Motions for Summary Judgment are **denied** as to the statute of limitations, are **granted** as to Plaintiff's intentional infliction of emotional distress claims, and are **denied in part and granted in part** as to CCDC and Carter County Fiscal Court.

## I.     Factual Background

Aside from specific issues that will be addressed in detail, the facts underlying Defendants' Motions for Summary Judgment are largely uncontested. Heather Lynn Jones initiated this action by filing a pro se Complaint on June 9, 2008 in which she alleged that Randy Binion and "Keith (Last name unknown) Maintenance Officer" violated her Eighth, Fourth, and Thirteenth Amendment rights. (Doc. # 2). Plaintiff filed an Amended Complaint on April 6, 2010 which added CCDC and the Carter County Fiscal Court as Defendants and alleged violations of the Eighth, Tenth, and Fourteenth Amendments, as well as a series of state law claims. (Doc. # 48). Specifically, Plaintiff alleged that Defendant Keith Hollingsworth sexually assaulted her on "multiple occasions" while she was incarcerated at CCDC. (Docs. # 48 ¶ 9).

Plaintiff was incarcerated at CCDC from February 1, 2007 through June 22, 2007 on charges of flagrant non support. (Doc. # 55-3). At all times relevant to the pending motions, from March 25, 2007 until her release on June 22, 2007, Plaintiff was housed in the J-pod of CCDC. (Doc. # 55-5). Plaintiff has been unable to recall the exact dates of the assaults so the parties and Court are left to extrapolate the dates based on the evidence of record.

Plaintiff alleged that the first incident occurred "probably within the first month" of CCDC implementing a smoke-free policy on April 1, 2007. (Doc. # 64-1 at 1, 5).[1] She claimed that Keith Hollingsworth grabbed her breast on the outside of her shirt while he was in her cell to fix the sink; he then gave her cigarettes. (Doc. # 64-1 at 26, 29-31). Plaintiff alleged that the next incident occurred a week-and-a-half or two weeks later when Hollingsworth again entered her cell, handed her cigarettes, and grabbed her breast. (Doc. # 64-1 at 34-35).

The specific date of the third incident is in dispute and is the central issue in the pending motions. Plaintiff alleged that she was asleep in her cell and when she awoke Hollingsworth "had his fingers in [her]" so she pretended to be asleep because she "was afraid to let him know [she] was awake." (Doc. # 64-1 at 44-45). Plaintiff testified that she could not remember how long Hollingsworth had his hand down her pants, but when he left, she got up and walked to Teresa Haney, a fellow inmate's, cell. (Doc. # 64-1 at 50-53). She alleged that Haney had a pack of Bugler tobacco that Hollingsworth had left for

_____

[1] On Plaintiff's motion, her deposition was filed under seal and is maintained as a paper document in the Ashland Clerk's office. (Docs. # 65-68). Because the Court has access to the electronically filed deposition, this Opinion & Order cites to Doc. # 64, which is identical to the paper copy in the Clerk's office, docketed as Doc. # 68.

Plaintiff.  (Doc. # 64-1 at 53-55).

## II.    Standard

Rule 56(a) entitles a moving party to summary judgment if that party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(c)(1) further instructs that the "party asserting that a fact cannot be or is genuinely disputed must support the assertion by" citing to the record or "showing that the materials cited do not establish the absence or presence of a genuine dispute."  In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The "moving party bears the burden of showing the absence of any genuine issues of material fact."  *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008).  The moving party may meet this burden by demonstrating the absence of evidence concerning an essential element of the nonmovant's claim on which it will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has satisfied its burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, it must produce specific facts showing that a genuine issue remains.  *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000).  If, after reviewing the record in its entirety, a rational fact finder could not find for the nonmoving party, summary judgment should be granted.  *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998).

Moreover, the trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact."  *Street v. J.C. Bradford & Co.*, 886 F.2d

1472, 1479-80 (6th Cir. 1989).  Rather, "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact."  *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001).

III.    **Analysis**

The pending Motions for Summary Judgment raise three issues.  First is the date of the third assault.  Defendants contend that there is no genuine dispute that the assault took place before June 4, 2007, so that Plaintiff's June 9, 2008 Complaint is barred by the applicable one-year statute of limitations.  Second, Defendants argue that Plaintiff's intentional infliction of emotional distress claim is merely a "gap-filler" and is not cognizable where, as here, Plaintiff also brings traditional state law tort claims.  Finally, Defendants move to dismiss CCDC and the Carter County Fiscal Court because(1) they were not named until the Amended Complaint was filed on April 6, 2010, well after the one-year statute of limitations had expired and (2) neither entity is subject to a § 1983 suit.  The Court takes each issue in turn.

**A.    A genuine dispute exists about whether the third assault took place before June 9, 2007**

Plaintiff's constitutional, negligence, assault, and battery claims are each subject to a one-year statute of limitations.  First, Plaintiff brings her constitutional violation claims pursuant to 42 U.S.C. § 1983, which borrows the statute of limitations for personal-injury tort actions from the state where the cause of action originated.  *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 180 (6th Cir. 1990) (citing *Wilson v. Garcia*, 471 U.S. 261, 280 (1985)).  "[T]he statute of limitations on a § 1983 claim, as determined by Kentucky law, is

5

one year." *Dixon v. Clem*, 492 F.3d 665, 671 (6th Cir. 2007) (citing KRS § 413.140(1)(a)).

Plaintiff's negligence, assault, and battery claims are also subject to KRS § 413.140(1)(a)'s

one-year statute of limitations. *Stivers v. Ellington*, 140 S.W.3d 599, 601 (Ky.App. 2004)

(holding a negligence action is controlled by KRS § 413.140's one-year statute of

limitation);*Grego v. Meijer, Inc.*, 187 F.Supp.2d 689, 693-94 (W.D.Ky. 2001) (interpreting

Kentucky law to require dismissal of assault and battery claims as barred by KRS

§ 413.140's one-year statute of limitations). Plaintiff does not contest that these claims are

subject to a one-year statute of limitations, but instead argues that she timely filed her

lawsuit.[2] (Doc. # 59 at 5).

Plaintiff filed her pro se Complaint on June 9, 2008. (Doc. # 2). Defendants contend

that there exists no genuine dispute that the third assault took place more than one year

earlier, before June 9, 2007, and is thus barred by the statute of limitations. Defendants

contend that Plaintiff's description of her interaction with a fellow inmate, Teresa Haney,

immediately after the assault demonstrates that the assault took place before June 9, 2007,

because Haney was transferred to a different part of CCDC on June 4, 2007.

Plaintiff has repeatedly been asked about the date of the third assault and has

repeatedly testified that she does not recall the exact date. Nonetheless, Plaintiff has

consistently estimated that the assault took place between one and two weeks before her

---

[2] Federal, rather than state, law governs when the limitations period begins to run. *Dixon*, 492 F.3d at 671. The Sixth Circuit follows the "discovery rule," which starts the limitations period "when the plaintiff knows or has reason to know of the injury which is the basis of his action and that a plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Id.* (quoting *Collard*, 896 F.2d at 183). Defendant Hollingsworth argued that because Plaintiff was aware of the injury and responsible party at the time of the incident, the limitations period began running immediately. (Doc. # 56 at 6). Neither the record nor Plaintiff disputes this assertion, so the Court calculates the one-year statute of limitations from the date of the final assault (to the extent the date can be determined).

release from CCDC on June 22, 2007. This estimate places the assault sometime between June 8 and June 15, 2007. Of course, if the assault took place before June 9, 2007 Plaintiff's claims would be barred by the statute of limitations; if it took place on or after June 9, 2007, however, her claims would not be barred by the statute of limitations.

In her May 27, 2010 deposition, Plaintiff stated that the third assault took place "between a week and two weeks before I got released from jail" on June 22, 2007. (Doc. # 64-1 at 46). But, she conceded, "I don't know exactly." (Doc. # 64-1 at 46). Plaintiff also discussed the third assault in an interview with the Federal Bureau of Investigation on June 5, 2009. (Doc. # 56-1). The report following the interview stated that the third assault took place "[a]pproximately one (1) week prior to Jones being released from CCDC," which would be on or about June 15, 2007. (Doc. # 56-1 at 1). Plaintiff also testified about the assault before the federal grand jury on January 15, 2009. (Doc. # 56-2). After Plaintiff detailed the first two incidents, the Assistant United States Attorney asked whether there was another assault "that was toward the end of late June of 2007?" (Doc. # 56-2 at 7). Plaintiff responded, "Yeah." (Doc. # 56-2 at 8). Finally, while testifying at Hollingsworth's criminal trial on October 14, 2010, Plaintiff was asked "how much before June 22" was the final assault? (Doc. # 59-2 at 14). Plaintiff responded "I'm not exactly sure. I just know it wasn't very long before I got out." (Doc. # 59-2 at 14). Plaintiff also testified at the trial that the third assault "was approximately a couple weeks before I got out of jail." (Doc. # 59-2 at 12). On cross-examination, Plaintiff was asked, "Now, I think I understood your testimony earlier that it was about two weeks [after the incident] that you got out of jail,

right?" (Doc. # 59-2 at 45). Plaintiff responded, "Approximately, around that."[3] (Doc. # 59-2 at 45).

Thus, when asked about the date of the third assault, Plaintiff has consistently stated that she is not sure and has estimated between one and two weeks before her release. Defendants, however, focus on Plaintiff's account of what happened immediately after the third assault, which, Plaintiff has acknowledged, assisted her in estimating that the assault took place between one and two weeks before her release from CCDC.

Plaintiff testified that after Hollingsworth left her cell, she got up from her bed and walked to Teresa Haney, a fellow inmate's, cell. (Doc. # 64-1 at 53). According to Plaintiff, Haney had a pouch of Bugler tobacco that Hollingsworth had instructed her to give to Plaintiff. (Doc. # 64-1 at 54-56). Plaintiff later explained that she estimated the date of the assault at between one and two weeks before her release "because I still had some of the Bugler left when I left jail." (Doc. # 64-1 at 46). Plaintiff was then asked, so "that's how you kind of, in your own mind, put a time frame on when this last incident happened?" (Doc. # 64-1 at 46). She responded, "Yes." (Doc. # 64-1 at 46).

Plaintiff has repeatedly testified to the same series of events that transpired after the assault. For example, the Federal Bureau of Investigation statement, drafted following an

---

[3] Plaintiff argues alternatively that her testimony at trial bars Defendants' Motions for Summary Judgment under the doctrine of collateral estoppel. (Doc. # 59 at 7). The Court does not reach this question because, as discussed below, it finds a genuine dispute of material fact about whether the third assault took place before June 9, 2007. However, the Court notes that the testimony Plaintiff relies on for collateral estoppel ("I just know [the third assault] wasn't very long before I got out") does not conclusively establish that the assault took place on or after June 9, 2007 and can hardly be characterized as "an issue of fact or law necessary" for Defendant's criminal conviction. *United States v. Mendoza*, 464 U.S. 154, 158 (1984); Doc. # 59-2 at 14. Indeed, as Defendants argue, Jury Instruction No. 14 in the criminal trial states that the Indictment charged Hollingsworth with a crime that took place "on or about" June 15, 2007 and explains that "[t]he Government does not have to prove that the crimes happened on" that exact date, only that the crimes occurred "reasonably close to" that date. (Docs. # 62 at 12; 62-4 at 7).

interview with Plaintiff, explained that after the third assault, "Hollingsworth left a pack of Bugler tobacco with Teresa Haney in room J7 and instructed Haney to give Jones some of the tobacco." (Doc. # 59-1). Likewise, Plaintiff told the grand jury that after the third assault, "Teresa Haney had a pack of Bugler and Keith [Hollingsworth] told her to give me some of it." (Doc. # 56-2 at 8). Finally, Plaintiff relayed a similar account at the criminal trial, testifying that she went to Teresa Haney's cell, and Haney "said Keith [Hollingsworth] left me a pack of Bugler and that she would give it to me a little bit at a time because I always gave my stuff away and it would be gone too fast." (Doc. # 59-2 at 41).

As Defendants emphasize, Plaintiff's repeated references to Teresa Haney and the Bugler tobacco are material to the pending motions because Haney was transferred to a different pod in CCDC—where she could not interact with Plaintiff—on June 4, 2007. (Docs. # 55-4; 64-5). Based on Plaintiff's repeated invocation of Haney in the moments immediately following the final assault, Defendants argue that "the third and final incident must have occurred prior to June 4, 2007." (Doc. # 56 at 4). Thus, Defendants conclude that Plaintiff's June 9, 2008 Complaint was filed after the one-year statute of limitations lapsed.

At Hollingsworth's criminal trial, however, Teresa Haney was asked about, and unequivocally denied, Plaintiff's account:

Q.   Okay. Well, let's get right to the point here. Have you ever had a conversation with Heather Jones where you told her that Keith Hollingsworth had given you Bugler tobacco to hold for her?
A.   No, sir.
Q.   Never happened?
A.   No. No, sir.
Q.   Have you ever had a conversation with Keith Hollingsworth where he asked you to hold tobacco for anyone else?
A.   No, sir.

| Q. | Never happened? |
| A. | Never happened, no. |
| Q. | Are you sure? |
| A. | I am positive. |
| Q. | So if you were told that there's an assertion that you had been given a pouch of Bugler tobacco, I want to be specific, Bugler tobacco to hold for Heather Woody Jones and were given that by Keith Hollingsworth, did that happen? |
| A. | No, sir, that did not, sir. |

(Doc. # 59-2 at 152)

Defendants argue that Plaintiff may not rely on (and the Court may not consider) Haney's testimony to defeat a motion for summary judgment because Haney's version of events contradicts Plaintiff's. In support, Defendants cite several Sixth Circuit cases that articulate the "sham affidavit" rule, which prohibits a party from "creat[ing] a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier deposition testimony." *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986); *see also Biechele v. Cedar Point, Inc.,* 747 F.2d 209, 215 (6th Cir. 1984); *Peck v. Bridgeport Machs., Inc.*, 237 F.3d 614, 619 (6th Cir. 2001) (finding plaintiff's affidavit "not cognizable for purposes of the summary judgment decision because it was made after the motion for summary judgment was filed and because it contradicts his earlier deposition testimony"). This case is not governed by the "sham affidavit" rule, however, because (1) the contested evidence is a third-party's testimony, not Plaintiff's, and (2) the testimony was given before, not after, Defendants filed their Motions for Summary Judgment.

Defendants' more persuasive argument is founded on several cases which stand for the broader proposition that "[w]hen a plaintiff stakes himself to a version of the facts in his sworn deposition testimony, he cannot create a genuine issue of material fact by

pointing to other evidence that contradicts his testimony, effectively asking the district court to disregard his own version of the facts." *Aull v. Osborne,* No. 4:07-CV-00016, 2009 WL 722605, at *2 (W.D.Ky. March 17, 2009) (quoting *Sullivan v. City of Satsuma*, Civ. A. 04-0473-WS-M, 2005 WL 2895983, at *5 (S.D.Ala. Oct. 28, 2005)). *Aull* cites a line of cases leading back to *Evans v. Stephens*, 407 F.3d 1272, 1278 (11th Cir. 2005) in which the Eleventh Circuit explained that "[w]hen the nonmovant has testified to events, we do not (as urged by Plaintiffs' counsel) pick and choose bits from other witnesses' essentially incompatible accounts (in effect, declining to credit some of the nonmovant's own testimony) and then string together those portions of the record to form the story that we deem most helpful to the nonmovant." The Eleventh Circuit reasoned that this rule arises from the requirement that a court adjudicating a motion for summary judgment view the evidence in the light most favorable to the nonmovant: "Instead, when conflicts arise between the facts evidenced by the parties, we credit the nonmoving party's *version.*" *Id.* Thus, "the courts owe a nonmovant no duty to disbelieve his sworn testimony which he chooses to submit for use in the case to be decided." *Id.* One district court in the Eleventh Circuit explained this principle as prohibiting a nonmovant from "avoid[ing] summary judgment by stitching together a narrative account that rejects his own testimony in favor of some other contradictory bit of evidence." *Vigor v. City of Saraland*, No. 07-0733-WS-M, 2008 WL 5225821, at *2 n.8 (S.D.Ala. Dec. 11, 2008).

For several reasons, however, this case is not governed by *Evans* and its progeny. First, *Evans*, and most of the interpretive case law, is out the Eleventh Circuit. Neither Defendants nor the Court's independent research has uncovered precedent controlling this Court that stands for the same proposition.

11

Second, unlike was the case in *Evans* and much of its progeny, the Court does not have the luxury of simply adopting Plaintiff's version of events because, standing alone, it contains internal inconsistences. Plaintiff has consistently estimated that the third assault took place one to two weeks before she was released from prison. But she also described a contemporaneous interaction with Haney that could not have occurred within her estimated date range. Thus, no matter how the Court adjudicates the pending motions, it cannot avoid "stitching together a narrative account that rejects [at least a part of Plaintiff's] testimony"—as *Evans* would prohibit.[4] *Vigor*, 2008 WL 5225821, at *2 n.8. Accordingly, Plaintiff's testimony, standing alone, creates a genuine factual dispute that must be resolved by a jury.

Third, the testimony in direct conflict with Plaintiff's testimony (i.e., the testimony to which Defendants object), while certainly relevant, is not necessarily dispositive of the pending motions.[5] To the extent that Plaintiff relied on the events following the assault to estimate the date, she relied on the fact that she had tobacco remaining when she left CCDC—not the presence of Teresa Haney in J-pod on the date of the assault. The following exchange at Plaintiff's deposition confirms that while Plaintiff's estimation of the date of the assault involves Haney, it relies only on the presence of tobacco:

---

[4] *Evans*, 407 F.3d at 1278 n.7, seems to contemplate this possibility in stating that it credits the nonmovant's version "at least when, as here, the nonmovant's testimony is not doubtlessly incredible and the movant seems competent to give testimony." Though it does not precisely describe the facts of this case, this footnote recognizes exceptions to the rule adopted in *Evans*.

[5] Haney testified to a narrow set of facts: that *she* never received tobacco from Defendant Hollingsworth and that *she* never gave Plaintiff tobacco. Haney did not testify that Plaintiff did not have Bugler tobacco or that Plaintiff's one-to-two week estimate was incorrect. Thus, though Haney's testimony is inconsistent with parts of Plaintiff's testimony, it can hardly be said that Haney offered an alternative version of the dispositive issue—when the assault took place.

| A. | [The third assault] was about a week and—maybe a week—between a week and two weeks before I got released from jail because I still had some of the Bugler left when I left jail. |
|---|---|
| Q. | So the way you're orienting it according to time is that you know that you got Bugler when you woke up and you still had some Bugler left when you were released; therefore, you know it had to be within a week or two of your release date? |
| A. | Yes. |
| Q. | That—that's how you kind of in your own mind, put a time frame on when this last incident happened? |
| A. | Yes.  I don't know exactly.  I just know I still had Bugler when I got ready to leave but just a little bit, and I left if for the girls in my locker. |

(Doc. # 64-1 at 45-46)

Plaintiff was pressed later in her deposition about whether the third assault could have occurred earlier: "Is it possible that you're off a week or two and the incident happened around May 31st, 2007 when you're reporting that 'pit of doom and gloom is back'?"  (Doc. # 64-1 at 86).  Plaintiff responded, "No, it's not possible that a pouch of Bugler can last a pod of inmates from that time until when I got out of jail.  That's not possible."  (Doc. # 64-1 at 86).  Thus, Plaintiff's date estimate relies on the fact that she still had tobacco when she was released from CCDC, not on which inmate provided her the tobacco.

Finally, though Plaintiff has repeatedly testified to the same series of events surrounding the assault, her testimony is laced with the caveat that she remains unsure of the precise date.  Thus, it can hardly be said that Plaintiff has staked herself to a specific date, which the Court is required to adopt for the purposes of the pending motions—as Defendants argue is required by *Evans*.  For these reasons, *Evans* and its progeny are inapplicable here and the Court will therefore consider Haney's testimony in adjudicating the pending motions for summary judgment.

Taken in total, then, there are four pieces of evidence before the Court. First, Plaintiff consistently estimated that the third and final assault took place between one and two weeks before her release on June 22, which translates to anytime between June 8 and June 15, 2007.[6] Second, Plaintiff has testified that she based this estimate on the fact that she had tobacco remaining when she was released from prison. Third, Plaintiff testified consistently and in detail to her interaction with fellow inmate Teresa Haney after the assault; prisoner cell tracking reports prove that any interaction between Plaintiff and Haney had to have occurred before June 4, 2007. Fourth, Teresa Haney denied the interaction with Plaintiff, and specifically denied receiving any tobacco from Hollingsworth and giving any other inmates tobacco.

After review of this evidence, Defendants conclude that "[t]he vagueness of Plaintiff's one- to two-week estimate is overwhelmed by the specificity of her tale of Teresa Haney and the Bugler tobacco." (Doc. # 62 at 7). In making this argument, Defendants acknowledge Plaintiff's testimony contains inconsistencies. This alone creates a genuine dispute of material fact, which is the province of the jury, not the Court, to reconcile. This dispute is deepened by Teresa Haney's testimony denying Plaintiff's account. In sum, therefore, the evidence reveals a genuine dispute about whether the final assault took place before June 9, 2007. Accordingly, Defendants' Motions for Summary Judgment as to the statute of limitations are **denied**.

---

[6] Of the eight days in this date range, only one—June 8, 2007—would fall outside the one-year statute of limitations.

**B.    The intentional infliction of emotional distress claim is a "gap-filler" and is, therefore, inappropriate here**

Defendants argue that Plaintiff's claim for intentional infliction of emotional distress (IIED) must be dismissed because it is merely a "gap-filler," which is prohibited where, as here, Plaintiff may recover for emotional distress as part of her common law claims of assault and battery.  Defendants rely on *Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 299 (Ky.App. 1993) in which the court held that the plaintiff, who had been sexually abused by a priest, could not recover under IIED because:

> [W]here an actor's conduct amounts to the commission of one of the traditional torts such as assault, battery, or negligence for which recovery for emotional distress is allowed, and the conduct was not intended only to cause extreme emotional distress in the victim, the tort of outrage will not lie. Recovery for emotional distress in those instances must be had under the appropriate traditional common law action.  The tort of outrage was intended to supplement the existing forms of recovery, not swallow them up.

In *Rigazio*, the court held that "[t]here is no evidence from which it could be inferred that the [defendant] intended only to invade [the plaintiff's] interest in freedom from emotional distress."   *Id.*    Instead, defendant's "intent plainly was his own sexual gratification accomplished by means of assault and battery."  *Id.*

The rule from *Rigazio* bars Plaintiff's IIED claim in this case.  In *Rigazio*, 853 S.W.2d at 299, the sexual assault was committed not with the sole intent to cause emotional distress but for the defendant's sexual gratification.  Similarly, the court in *Doe v. Suroor*, No. 3:05-CV-728-H, 2007 WL 1651993, at *1 (W.D.Ky. June 6, 2007), interpreted *Rigazio* to bar a claim for IIED where the assault was not intended solely to inflict emotional distress but instead "sexual gratification or sexual dominance was the primary purpose at work here."  The courts in both *Rigazio* and *Doe* held that the actions should be brought as

traditional state law torts.

By contrast, the court in *Brewer v. Hillard*, 15 S.W.3d 1, 4, 7-8 (Ky.App. 1999) found that an IIED claim was available to the plaintiff who alleged that his supervisor made sexually explicit comments, inappropriately touched him, and requested sex. The court distinguished *Rigazio*, finding defendant's "intent was to harass or intimidate by sexual embarrassment, rather than to merely touch improperly or threaten improper touch." *Id.* at 8. "In fact," the court continued, the defendant "testified he did *not* take any of the actions for sexual gratification." *Id.*

Plaintiff has offered no argument and pointed to no evidence to rebut Defendants' arguments that this case is governed by *Rigazio*. Instead, Plaintiff concludes that "[b]ecause the Defendants have failed to demonstrate adequate grounds for summary judgment on the claims that must be brought within one-year under Kentucky's statute of limitations, the Court need not decide whether the longer statute of limitations for the claim of intentional infliction of emotional distress is applicable." (Doc. # 59 at 7). But the fact that the Court found in Plaintiff's favor on the statute of limitations issue does not moot Defendants' IIED argument.

Instead, the Court holds that this case is closer to *Rigazio* and *Doe* than *Brewer* and, accordingly, Plaintiff's IIED claim must be dismissed. As in *Rigazio*, Plaintiff has alleged assault and battery and may be awarded damages under those claims for emotional distress. *Haley v. City of Elsmere*, No. 2008-106-WOB, 2010 WL 3515564, at*11 (E.D.Ky. Aug. 31, 2010) ("Here, however, plaintiff has pled claims for assault and battery, the traditional torts at issue in *Rigazio* which the court there found could not be supplanted by a claim for [IIED]"). Moreover, as in *Rigazio*, the record does not suggest that

Hollingsworth's assaults were intended for anything but his own sexual gratification. Indeed, Plaintiff has presented no evidence (or allegation) that Defendant Hollingsworth's assaults were intended solely to cause Plaintiff emotional damage. Accordingly, Plaintiff's IIED claim does not lie and Defendants' Motions for Summary Judgment on this ground are **granted**.

    **C.** **Plaintiff's claims are properly brought against Carter County, not CCDC and the Carter County Fiscal Court; whether they are timely depends on if they "relate back" to the original Complaint**

        **1.** **Neither CCDC nor Carter County Fiscal Court is a proper party**

Defendants CCDC and the Carter County Fiscal Court also move, in a footnote, to be dismissed on grounds that neither entity is subject to suit. (Doc. # 55-1 at 6 n.4). Plaintiff did not respond to this argument.

The Sixth Circuit has found that municipal departments, such as jails, are not "persons" subject to suit under 28 U.S.C. § 1983. *Marbry v. Corr. Med. Servs.* 238 F.3d 422, 2000 WL 1720959, at *2 (6th Cir. Nov. 6, 2000) (Table) (upholding dismissal of Shelby County Jail because it is not an entity subject to suit under § 1983). Accordingly, district courts in the Sixth Circuit have dismissed jails from § 1983 actions, reasoning that they are improper defendants. *Allnutt v. Grant Cnty. Det. Ctr.*, No. 2:11-CV-37-HRW, 2011 WL 1097748, at *2 (E.D.Ky. March 22, 2011) (citing *Marbry* to dismiss the Grant County Detention Center from a § 1983 action); *Chism v. Christian Cnty. Jail*, No. 5:10-CV-88-R, 2010 WL 3259718, at *2 (W.D.Ky. Aug. 18, 2010) (same, as to Christian County Jail). Other courts, after determining that a jail is an improper defendant, construe claims against the jail as claims against the proper defendant—the municipality. *Potts v. Shrewsberry*, No.

3:09-CV-408, 2010 WL 2572808, at *2 (W.D.Ky. June 23, 2010) (construing claims against the Breckinridge County Detention Center as claims against Breckinridge County rather than dismissing the detention center); *Rideout v. Daviess Cnty. Det. Ctr.*, No. 4:09-CV-P74-M, 2009 WL 3614310, at *2 (W.D.Ky. Oct. 29, 2009) ("The Court will therefore construe the claim against the Daviess County Detention Center as brought against Daviess County").

Similarly, case law in the Sixth Circuit equates a suit against a county fiscal court with a suit against the county itself. In *Smallwood v. Jefferson County Government*, 743 F.Supp. 502, 503 (W.D.Ky. 1990), the plaintiff brought claims against the Jefferson County Government, Jefferson County Fiscal Court, and the Jefferson County Judge Executive. Though Defendants cite this case to support dismissing the Carter County Fiscal Court, the court in *Smallwood* reasoned that the fiscal court "functions as the essential governing body of the County and is analogous to a City Council." *Id.* Thus, rather than dismiss the Jefferson County Fiscal Court, the *Smallwood* court construed the claims as being brought against only Jefferson County. *Id.*

As in *Smallwood*, 743 F.Supp. at 503, "given the nature of the named Defendants and the allegation[s] contained in the complaint, there is only one Defendant"—Carter County. Accordingly, the Court will construe Plaintiff's claims against CCDC and the Carter County Fiscal Court as being brought against Carter County itself.

> **2.    Whether the claims against Carter County are timely depends on whether the Amended Complaint "relates back"**

Defendants CCDC and Carter County Fiscal Court also argue they should be dismissed because they were first named in the Amended Complaint, filed April 6, 2010,

well after the one-year statute of limitations expired.[7] (Docs. # 55-1 at 5; 62 at 10). However, neither Defendants' Motion for Summary Judgment nor their Reply provides any briefing in support. Instead, both briefs offer only the conclusory statement that Defendants are entitled to summary judgment because the Amended Complaint was undisputedly filed after the one-year statute of limitations had expired. Plaintiff's Response brief, in turn, simply does not address this issue.

Whether the claims in the Amended Complaint against CCDC and the Carter County Fiscal Court (now, Carter County itself) are barred by the one-year statute of limitations depends on whether the Amended Complaint "relates back" to Plaintiff's original pro se Complaint. Because the Amended Complaint "changes the party or the naming of the party against whom a claim is asserted," this determination is made pursuant to Fed.R.Civ.P. (Rule) 15(c)(1)(C). This rule, in turn, is a multi-factor test that considers, among other elements, whether the party to be added by the amendment had timely notice of the action and knew that the action would have been brought against it, but for a mistake concerning its identity.

Currently, the Court lacks any evidence as to whether Defendants CCDC and the Carter County Fiscal Court—or, Carter County itself, for that matter—had notice of the action and whether they knew the action would be brought against them but for a mistake in identify. Further, neither party has briefed how Rule 15(c)(1)(C) should be interpreted and applied to this case. Rather, Defendants appear to have raised this argument as an

---

[7] Defendants concede that the IIED claim has a five year statute of limitations and would, therefore, not be time-barred. *Craft v. Rice*, 671 S.W.2d 247, 250-51 (Ky. 1984). The Court has already held, however, that Plaintiff's IIED claim will not lie in this case. Thus, Defendants' arguments as to the Amended Complaint apply to all remaining claims therein.

afterthought and Plaintiffs apparently felt no need to respond. Because the Court lacks even the most perfunctory briefing on how Rule 15(c)(1)(C) should be applied and whether it has been satisfied, the Motion for Summary Judgment by Defendants CCDC and the Carter County Fiscal Court on grounds that they were named after the one year-statute of limitations expired is **denied without prejudice**.

## IV. Conclusion

For the foregoing reasons, **IT IS ORDERED** that,

1.  Defendants' Motions for Summary Judgment (Docs. # 55, 56) are **GRANTED in part** and **DENIED in part**;

    a.  Summary Judgment on grounds that Plaintiff's claims are barred by the statute of limitations is **DENIED**;

    b.  Summary Judgment as to Plaintiff's intentional infliction of emotional distress is **GRANTED** and Plaintiff's intentional infliction of emotional distress claim is **DISMISSED**;

    c.  Summary Judgment as to Plaintiff's claims against CCDC and the Carter County Fiscal Court is **GRANTED** insofar as Plaintiff's claims against these entities are construed as claims against Carter County itself;

    d.  Summary Judgment on grounds that Plaintiff's Amended Complaint naming CCDC and Carter County Fiscal Court is barred by the statute of limitations is **DENIED without prejudice**.

2.    This matter is hereby scheduled for a status conference on **Monday, May 2, 2011** at **1 p.m. in Covington**.

This 15th day of April, 2011.



Signed By:

*David L. Bunning*

United States District Judge